1
2
3           **UNITED STATES DISTRICT COURT**
4           **EASTERN DISTRICT OF CALIFORNIA**
5

| | |
|---|---|
| 6  **FARSHAD OREIZI,** | **CASE NO. 1:18-cv-00662-AWI-EPG** |
| 7          **Plaintiff,** | |
| 8          **v.** | **ORDER ON COUNTY OF FRESNO'S MOTION FOR SUMMARY JUDGMENT** |
| 9  **COUNTY OF FRESNO and DOES 1 through 20, inclusive,** | (Doc. No. 66) |
| 10 | |
| 11          **Defendants.** | |

12

13     This case involves Plaintiff Farshad Oreizi's allegations of discrimination, retaliation, and

14 unpaid overtime wages against his former employer Defendant County of Fresno.  Now before the

15 Court is the County's motion for summary judgment, which challenges Oreizi's six remaining

16 causes of action.  For the reasons that follow, the Court will grant in part and deny in part the

17 County's motion.

18

19                    **BACKGROUND**

20     Oreizi filed his complaint on March 9, 2018.  Doc. No. 1 at 6–19 ("Compl.").  He currently

21 proceeds with six causes of action:  (1) discrimination under the California Fair Employment and

22 Housing Act ("FEHA"), Cal. Gov't Code § 12940; (2) retaliation under FEHA, Cal. Gov't Code

23 § 12940; (3) failure to provide a workplace free of harassment, discrimination, and retaliation

24 under FEHA, Cal. Gov't Code § 12940; (4) whistleblower retaliation (pre-civil service hearing),

25 Cal. Labor Code § 1102.5; (5) whistleblower retaliation (post-civil service hearing), Cal. Labor

26 Code § 1102.5; and (6) unpaid overtime wages under the federal Fair Labor Standards Act, 29

27 U.S.C. § 207(a)(1).  Compl., ¶¶ 21–49; Doc. No. 60 at 4–7, 16 (dismissing Oreizi's claims for

28 defamation and invasion of privacy).

1    The County now seeks judgment against each of these claims.  Doc. Nos. 66, 66-1 & 68.

2    Oreizi opposes the County's motion in full.  Doc. No. 67.[1]

3

4                                **LEGAL STANDARD**

5            Summary judgment is proper where there exists no genuine issue as to any material fact

6    and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Adickes v.

7    S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075,

8    1080 (9th Cir. 2004).  The party moving for summary judgment bears the initial burden of

9    informing the court of the basis for its motion and identifying the portions of any declarations,

10   pleadings, and discovery that demonstrate the absence of a genuine issue of material fact.  Celotex

11   Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984

12   (9th Cir. 2007).  When the nonmoving party will have the burden of proof on an issue at trial, the

13   moving party may prevail by presenting evidence that negates an essential element of the

14   nonmoving party's claim or by merely pointing out that there is an absence of evidence to support

15   an essential element of the nonmoving party's claim.  See James River Ins. Co. v. Herbert Schenk,

16   P.C., 523 F.3d 915, 923 (9th Cir. 2008); Soremekun, 509 F.3d at 984.  If the moving party meets

17   its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to

18   any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

19   574, 586 (1986); Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir.

20   2000).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of

21   material fact, the moving party is entitled to summary judgment.  Nissan Fire, 210 F.3d at 1103.

22   On the other hand, if the nonmoving party produces sufficient evidence to create a genuine issue

23   of material fact, the nonmoving party defeats the motion.  Id.

24

25   _____

26   [1] The parties' instant disputes first arose through motions in limine.  Doc. Nos. 40 at 2 & 44 at 10–13, 25–28.  At a
hearing on those motions, the parties jointly proposed addressing their respective arguments through summary

27   judgment briefing.  The Court granted this request and reserved further ruling on the relevant motions (Doc. No. 60 at
16).  See Elliott v. Versa CIC, L.P., 349 F. Supp. 3d 1000, 1002 (S.D. Cal. 2018) (explaining that motions in limine

28   are not a proper vehicle for dispositive challenges).  The Court's resolution of the County's summary judgment
motion disposes of the need for such further ruling on those motions.

                                        2

**DISCUSSION**

The County challenges Oreizi's claims on three grounds.  First, the County asserts that all of Oreizi's claims are precluded for want of judicial exhaustion.  Second, the County asserts that part of Oreizi's FEHA claims are also precluded for want of administrative exhaustion.  And third, the County asserts that it should be granted judgment on Oreizi's whistleblower claims as neither is legally viable.

These arguments all rest at least in part on the following undisputed factual circumstances: On October 12, 2016, the County served Oreizi with an order for disciplinary action that advised he would be terminated as of that date.  Doc. No. 68-1 at 2.  Oreizi appealed the County's action to the Fresno County Civil Service Commission.  Id.  The Commission heard his appeal on January 24 and 26, 2017.  Id.  Thereafter, the Commission issued a Notice of Decision that granted the appeal with respect to the discipline that had been imposed.  Id.; Doc. No. 66-4 at 4–6 ("Notice of Decision").  Specifically, the Commission ordered that (1) Oreizi was to be retroactively reinstated subject to a 240-hour suspension without pay, and (2) the County was to provide compensatory back-pay as Oreizi had already served a suspension without pay longer than 240 hours.  Notice of Decision at 2.  Oreizi returned to work but resigned only days later on March 17, 2017.  Doc. No. 68-1 at 4–5.

### A.    Judicial exhaustion

The County first seeks judgment against all of Oreizi's claims under the doctrine of judicial exhaustion.  In short, the County contends that the Commission's decision on Oreizi's appeal of the County's disciplinary action is binding against Oreizi's claims because he never challenged that decision in state court.  Oreizi acknowledges that fact, but disputes application of the preclusion doctrine here.

#### 1.    Applicable framework

Under federal common law, federal courts give preclusive effect to state administrative proceedings that meet the fairness requirements enunciated in United States v. Utah Construction

1  & Mining Co., 384 U.S. 394 (1966).  "Because California has adopted the Utah Construction

2  standard, we give preclusive effect to a state administrative decision if the California courts would

3  do so."  Doe v. Regents of the Univ. of Cal., 891 F.3d 1147, 1155 (9th Cir. 2018); see also Miller

4  v. County of Santa Cruz, 39 F.3d 1030, 1032–33 (9th Cir. 1994).  Under California law, an

5  administrative decision achieves preclusive effect if a public employee pursues remedies and

6  receives adverse findings through an administrative proceeding of a sufficiently judicial character,

7  and then fails to pursue available avenues for judicial reversal of those findings.  McDonald v.

8  Antelope Valley Cmty. Coll. Dist., 45 Cal. 4th 88 113 (2008) (citing Johnson v. City of Loma

9  Linda, 24 Cal. 4th 61, 76 (2000)).  As Johnson explained, this requirement of judicial exhaustion

10 "is necessary to avoid giving binding 'effect to the administrative agency's decision, because that

11 decision has achieved finality due to the aggrieved party's failure to pursue the exclusive judicial

12 remedy for reviewing administrative action.'"  Johnson, 24 Cal. 4th at 70 (quoted source

13 omitted)).  Judicial exhaustion "ensures proper respect for administrative proceedings" and

14 "ensures that employees who choose to utilize internal procedures are not given a second 'bite of

15 the procedural apple.'"  Schifando v. City of Los Angeles, 31 Cal. 4th 1074, 1090–91 (2003).

16     When the issue of judicial exhaustion arises in a subsequent case, the court's analysis

17 proceeds in two steps.  First, the court must determine whether the administrative proceeding was

18 of a sufficiently judicial character to support collateral estoppel based on the standard set forth in

19 Utah Construction.  Murray v. Alaska Airlines, Inc., 50 Cal. 4th 860, 867 (2010); People v. Sims,

20 32 Cal. 3d 468, 479 (1982).  Under that standard, "collateral estoppel should be applied '[w]hen

21 an administrative agency is acting in a judicial capacity and resolves disputed issues of fact

22 properly before it which the parties have had an adequate opportunity to litigate.'"  Eilrich v.

23 Remas, 839 F.2d 630, 633 (9th Cir. 1988) (quoting Utah Constr., 384 U.S. at 422).  Second, the

24 court must determine whether the elements of collateral estoppel are satisfied.  Murray, 50 Cal. 4th

25 at 868; Sims, 32 Cal. 3d at 484.  Traditionally, collateral estoppel bars relitigation of an issue if (1)

26 the issue necessarily decided at the previous proceeding is identical to the one that is sought to be

27 relitigated, (2) the previous proceeding resulted in a final judgment on the merits, and (3) the party

28 against whom collateral estoppel is asserted was a party or in privity with a party at the prior

4

1  proceeding.  Eilrich, 839 F.2d at 633 (citing Sims, 32 Cal. 3d at 484).

2      The County argues that the proceeding before the Fresno County Civil Service

3  Commission met the fairness requirements of Utah Construction and that application of the

4  traditional elements of collateral estoppel precludes Oreizi from pursuing his FEHA claims in a

5  manner that conflicts with the Commission's decision.[2]  Relevant here, California law affords

6  government employees who believe they have suffered discrimination, retaliation, or harassment a

7  choice between two remedial paths:  either file a complaint in court under FEHA or pursue civil

8  service remedies through the internal grievance procedures of a local or state administrative

9  agency (such as a county civil service commission).  Schifando, 31 Cal. 4th at 1087.  When an

10  employee pursues civil service remedies and receives an adverse decision through a quasi-judicial

11  proceeding, that decision is binding in a later civil action under FEHA unless it is set aside by way

12  of a petition for a writ of mandate under California Code of Civil Procedure § 1094.5.  Schifando,

13  31 Cal. 4th at 1089–91.  Oreizi does not dispute that he did contest the Commission's decision by

14  filing a § 1094.5 petition in state court.  But he disputes that the Commission proceeding met the

15  Utah Construction fairness requirements and that collateral estoppel applies here.

16

17          **2.      The fairness requirements of Utah Construction**

18      As noted above, Utah Construction requires that the administrative agency (1) acted in a

19  judicial capacity, (2) resolved disputed issues of fact properly before it, and (3) provided the

20  parties with an adequate opportunity to litigate.  384 U.S. at 422.  Where these requirements are

21  met, preclusion applies to "state administrative adjudications of legal as well as factual issues,

22  even if unreviewed."  Miller, 39 F.3d at 1032–33 (quoting Guild Wineries & Distilleries v.

23  ───────────────

24  [2] Although the County seeks judgment against all of Oreizi's claims under this argument, the Court summarily rejects
    its effort as to Oreizi's claims for unpaid overtime wages and whistleblower violations.  The County only conclusorily
25  addresses the former in its motion and the Court finds convincing Oreizi's explanation that his pursuit of unpaid
    overtime wages is not related to the Commission's resolution of his appeal to the County's disciplinary action.  As for
26  the whistleblower causes of action, the California Court of Appeal has held that claims for retaliation brought under
    § 1102.5 are not precluded by state administrative determinations.  Taswell v. Regents of Univ. of Cal., 23 Cal. App.
27  5th 343, 362 (2018).  While the County argues that this Court is not bound by that decision, the Ninth Circuit has
    favorably cited Taswell to hold that a § 1102.5 claim was not precluded by a civil service commission order.  See
28  Bahra v. County of San Bernardino, 945 F.3d 1231, 1234–36 (9th Cir. 2019).  As this Court is bound by Ninth Circuit
    decisions, it will similarly conclude that Oreizi's § 1102.5 claims are not precluded by the Commission's decision.

1  Whitehall Co., 853 F.2d 755, 758 (9th Cir. 1988)).  California case law includes numerous

2  examples of preclusion based on judicial exhaustion failures following a civil service commission

3  decision.  See, e.g., Johnson, 24 Cal. 4th at 71; Miller v. City of Los Angeles, 169 Cal. App. 4th

4  1373, 1379, 1383 (2008); Page v. L.A. Cty. Prob. Dep't, 123 Cal. App. 4th 1135, 1143–44 (2004);

5  Knickerbocker v. City of Stockton, 199 Cal. App. 3d 235, 244–45 (1988).  While the Utah

6  Construction analysis is case-specific, these examples provide some support to a theory that such

7  administrative proceedings are generally considered to be of a sufficiently judicial character to

8  support collateral estoppel.

9

10                              **a.      Judicial capacity**

11        To determine whether a prior administrative proceeding was undertaken in a judicial

12  capacity, California law considers indicia such as "a hearing before an impartial decision maker;

13  testimony given under oath or affirmation; a party's ability to subpoena, call, examine, and cross-

14  examine witnesses, to introduce documentary evidence, and to make oral and written argument;

15  the taking of a record of the proceeding; and a written statement of reasons for the decision." Pac.

16  Lumber Co. v. State Water Res. Control Bd., 37 Cal. 4th 921, 944 (2006).

17        Evidence before the Court establishes the existence of these indicia.  After the County

18  served an order for disciplinary action on Oreizi, he appealed to the Commission.  Doc. No. 66-3

19  ("Basham Decl."), ¶¶ 3–4; Notice of Decision; Doc. No. 68-1 at 2.  The Commission then heard

20  that appeal across two days.  Basham Decl., ¶ 5; Notice of Decision at 1; Doc. No. 68-1 at 2.

21  During the hearing, oral testimony was taken and subject to cross-examination.  Basham Decl.,

22  ¶ 5; Notice of Decision at 1; Doc. No. 68-1 at 2.  Documentary evidence was introduced and oral

23  argument was presented.  Basham Decl., ¶ 5; Notice of Decision at 1; Doc. No. 68-1 at 2.  The

24  hearing was recorded and transcribed.  Basham Decl., ¶ 5; Doc. No. 68-1 at 2.  Oreizi was present

25  at the hearing and had an opportunity to call and examine witnesses, present evidence, testify, and

26  cross-examine County witnesses.  Basham Decl., ¶ 5; Notice of Decision at 1; Doc. No. 68-1 at 2.

27  At the conclusion of the hearing, the Commission issued a Notice of Decision that granted part of

28  Oreizi's appeal with respect to the discipline that had been imposed.  Basham Decl., ¶ 9; Notice of

Decision at 1–2; Doc. No. 68-1 at 2.  Upon request of the County, the Commission later produced a written Findings of Fact and Conclusions of Law that comprehensively addressed Oreizi's appeal.  Basham Decl., ¶ 18; Doc. No. 66-4 at 8–38 ("Findings and Conclusions"); Doc. No. 68-1 at 6–7.  Amongst its legal conclusions, the Commission reasserted that Oreizi's appeal was granted in part.  Findings and Conclusions at 26–27.  The Commission also provided notice to the parties that any judicial appeal of the Findings and Conclusions needed to be filed with the Fresno County Superior Court within ninety days, absent a timely motion for reconsideration or rehearing.  Id. at 31.  See also Cal. Civ. Proc. Code § 1094.6(b).

To support their argument, the County has also submitted excerpts of the Commission's bylaws and the personnel rules of Fresno County.  Basham Decl., ¶ 7; Ex. B ("Bylaws"), Ex. C ("Personnel Rules").  The bylaws inform that hearings before the Commission shall include opening statements, presentation of evidence, direct and cross examination of witnesses, and closing arguments.  Bylaws, art. V, § 2(F).  Although technical judicial rules of evidence need not be followed, the Commission is to both consider any evidentiary objection brought to its attention and allow for the admission of any relevant evidence "if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs."  Id., § 2(B)(2)(a)–(b).  Whenever formal testimonial evidence is taken by the Commission, witnesses are to be sworn before their testimony is received.  Id., § 2(B)(2)(c).  Finally, for all evidentiary hearings, legal counsel for the Commission is to prepare a formal notice of decision to be executed by the Commission chair.  Id., § 2(C).  In rending such a decision, "[t]he Commission must make findings and factual determinations based on the evidence and testimony presented during the hearing in accordance with applicable law."  Id., § 2(D).

Meanwhile, the personnel rules indicate that the hearing of an appeal to a disciplinary action is to be noticed by the Commission, with the provision of at least fifteen days for preparation.  Personnel Rule 10, § 10140.  Employees and the County generally have the right to be represented by the person of their choice at a Commission hearing.  Id., § 10160.  Both sides also have the rights "to call and examine witnesses; to introduce exhibits; to cross-examine opposing witnesses on any matter relevant to the issues even though that matter was not covered

in the direct examination; to impeach any witness regardless of which party first called him/her to testify; and to rebut the evidence against them." Id.  "Oral evidence shall be taken only on oath or affirmation." Id.  And even though a Commission hearing need not be conducted according to technical rules relating to evidence and hearsay evidence is generally admissible, such evidence cannot sustain a finding on its own unless the hearsay would be admissible over objection in civil actions. Id.

While these sources of information do not directly inform how this specific hearing was conducted, they lend support for a conclusion that Oreizi's hearing before the Commission possessed the requisite judicial capacity.  If anything, this neutral evidence merely adds details regarding the formal procedures that are to be followed for all Commission hearings, including the hearing of Oreizi's appeal.  The evidence at hand does not suggest those details were not present for Oreizi's hearing, nor has either party claimed as much.

Rather, against the above-described evidence, Oreizi argues that the Commission lacked judicial capacity because it was not acting as an impartial decisionmaker in the production of the Findings and Conclusions.  Oreizi primarily focuses on evidence regarding the timing of that formal decision.  This theory starts with the Commission's original Notice of Decision, which was issued one day after the hearing concluded on January 26, 2017, and informed that the parties had five days to request for the production of a formal written decision:

> If either Appellant or Respondent desires the entry of written Findings of Fact in this matter he/she shall provide a written request for such Findings, to the Secretary of the Commission, within five (5) business days of the date of service of this Notice.  Failure to make such a timely request shall constitute a waiver of Findings. In such event, the Decision as set forth herein shall constitute the final Decision of the Commission.

Notice of Decision at 3.  As noted above, the Commission ultimately produced the Findings and Conclusions upon request from the County.  As explained below, the County made that specific request on July 13, 2017.  Oreizi argues that this evidence shows that the County "manipulate[d]" the Commission into breaking the five-day rule it set forth in the Notice of Decision.  Oreizi describes that action as a "violation of basic due process."

And yet, other presented evidence shows a much more involved course of events than

Oreizi's argument implies.  Namely, on January 31, 2017, or four days after the Notice of

Decision was issued, the County requested for a rehearing or reconsideration of the Commission's

decision.  Basham Decl., ¶ 10.  The County made this request to have the matter reconsidered by

four commissioners, as the Notice of Decision had only been signed by three commissioners (one

of the commissioners was absent for the second day of the original hearing), and the

Commission's practice was to have at least four commissioners participate at hearings.  Id.  Oreizi

submitted his opposition to the County's request.  Doc. No. 67-2 ("Oreizi Decl."), ¶ 3, Ex. B.

On February 2, 2017, Oreizi requested for the production of written findings and

conclusions.  Basham Decl., ¶ 11.  On February 10, 2017, he withdrew that request.  Id.

On March 13, 2017, the Commission issued a new Notice of Decision.  Basham Decl.,

¶ 12, Ex. E; Oreizi Decl., ¶ 4, Ex. C.  This Notice of Decision described the original Notice of

Decision and acknowledged the County's reconsideration request and Oreizi's opposition.  Oreizi

Decl., Ex. C.  It also confirmed that the Commission had (1) unanimously voted to reconsider the

Notice of Decision for purposes of having the previously absent commissioner participate, (2)

deliberated on March 2, 2017, with the absent commissioner present, and (3) unanimously voted

to readopt and confirm its previous Notice of Decision.  Id.

One day later, on March 14, 2017, the County sent a request to the Commission for the

production of written findings and conclusions.  Basham Decl., ¶ 13, Ex. E.  The Commission

secretary acknowledged receipt of the request, noting further that "I'll put it on April agenda."  Id.,

Ex. E.  The County did not notify Oreizi of this request.  Oreizi Decl., ¶ 6.

Three days later, on March 17, 2017, Oreizi resigned from his employment with the

County.  Basham Decl., ¶ 14.

On April 13, 2017, at the Commission's regular monthly meeting, counsel for the County

appeared and withdrew the County's request for written findings and conclusions "due to Mr.

Oreizi's resignation from employment."  Id., ¶ 15.

On June 5, 2017, the County received a letter signed by Oreizi and directed to various

persons within and outside the County.  Id., ¶ 16, Ex. F.  Amongst its contents, the letter states:

> I had a 2-day hearing with Fresno County Civil Service Commission in January

2017 and during this hearing and presentations Fresno County Ag Department brought false information, planted evidence, changed legal forms, fabricated stories and twisted information. However, Fresno County Civil Service Commission voted unanimously 3-0 to drop all charges and reinstate me with [sic] to my former job and back pay from October 12, 2016. They did leave a suspension of 240 hours without pay, which I disagreed with but did submit to their decision. Fresno County Department of Agriculture then demanded a re-hearing due to one of the Commissioners being absent, so with a re-vote of 4-0 and I was still awarded the same verdict on March 7, 2017.

Id., Ex. F. The letter also notes that "I am asking you to consider my case in filing legal action against Fresno County Department of Agriculture for emotional, mental and monetary damages."

Id. Later that month, counsel for the County was informed that Oreizi was threatening to sue the County over his employment. Id., ¶ 16.

On July 13, 2017, at the Commission's regular monthly meeting, counsel for the County appeared and renewed the County's request for written findings and conclusions because of Oreizi's actions the month before. Id., ¶ 17. Counsel's purpose was to "ensure that there was a complete record of what had happened in Oreizi's employment and to make sure the administrative record was clear, given his misstatements or misinterpretations of the decision." Id.

On August 10, 2017, the Commission granted the County's request. Id.

On October 12, 2017, the Commission issued its Findings and Conclusions. Findings and Conclusions at 31.

The Commission made a similar record of this history in its formal decision:

> This matter came on regularly before the Civil Service Commission on the hearing date of January 24 and January 26, 2017, in Fresno, California. Appellant represented himself *in propria persona*, and Respondent Fresno County Department of Agriculture was represented by Deputy County Counsel Cathy Basham.
> After receiving oral and documentary evidence and arguments at the hearing, and after giving due consideration thereto, and good cause appearing, the Civil Service Commission issued a Notice of Decision on January 27, 2017. Thereafter, the County, through Ms. Basham, timely requested written Findings of Fact.
> The County later withdrew its timely request for written Findings of Fact after it appeared that all disputes with Mr. Farshad Oreizi had been resolved. Then Mr. Oreizi wrote a letter dated June 4, 2017, to the Commission and other persons wherein he mischaracterized the Civil Service Commission's Notice of Decision in his case. Mr. Oreizi wrongfully stated the Commission had dropped all charges against him and ordered him reinstated. In truth, the Commission's Notice of Decision sustained the County's grounds for discipline, but lowered the discipline from termination to suspension for 240 hours without pay (due to Mr. Oreizi's violations set forth in the Order of Discipline). The County of Fresno, again

10

1
2
through Ms. Basham, has now asked the Commission to allow a late request for written Findings of Fact.  The County has explained that because Mr. Oreizi's June 4, 2017, letter threatens various legal actions, the County now desires full Findings of Fact.

3
On July 20, 2017, the Commission considered the County's special request, and unanimously voted to grant the County's request for filings.

4
Id. at 1–2.

5
The Court finds that these circumstances, when considered together and in full do not show

6
that the Commission was biased in its actions here.  Collectively, this evidence establishes that the

7
County made a timely request for the production of written findings and conclusions after the

8
Commission ruled on the County's reconsideration motion.  The County withdrew that timely

9
request once it appeared that Oreizi's resignation had resolved (or at least left moot) any lingering

10
disputes.  And then the County later sought permission to renew that request—while fully

11
acknowledging its tardiness—once it came into possession of a letter that, among other things,

12
asserted that it had "brought false information, planted evidence, changed legal forms, fabricated

13
stories and twisted information" during the hearing.  The Commission recognized this as a

14
"special request," but also unanimously voted to grant the County that permission.  To Oreizi's

15
point, that request was made more than five days after the Commission issued its reconsideration

16
ruling.  Yet, no evidence or authority before the Court suggests that the Commission was barred

17
from considering a late request—or a renewed request that was originally timely, for that matter—

18
to produce written findings and conclusions.[3]

19
The same can be said regarding Oreizi's assertions that bias and prejudice are also shown

20
by his inability to object to the County's request for written findings and conclusions and the

21
County's ex parte communication with the Commission in making that request.  For one, the

22
evidentiary record indicates that the County's renewed request for a formal written decision was

23
made at the Commission's regular monthly meeting in July 2017.  While Oreizi describes this as

24
an improper ex parte communication and an abuse of due process, no presented evidence suggests

25

26
27
28
[3] Oreizi is also correct in pointing out that his claim under the Government Claims Act—which alleged unlawful discrimination, retaliation, and harassment based on his national origin—was before the County during the time in which the Commission was producing the Findings and Conclusions.  Doc. No. 67-4 ("Bradley Decl."), ¶ 6, Ex. E. But accusatory assertions aside, he offers no evidence to support his theory that the Commission was somehow biased in its own decisionmaking simply because his independent government claim was simultaneously being considered by the Fresno County Board of Supervisors.

that to be the case.  This includes a Commission bylaw stating that "Appellants and Respondents, as well as Charging Parties and Respondents, shall not directly contact commissioners regarding adverse matters pending before the Commission or to be brought before the Commission." Bylaws, art. VI, § 3.  Even assuming that Oreizi's appeal constituted a still-pending adverse matter at the time of the County's renewed request, the Court does not read this provision to necessarily prohibit communications of this kind that are raised before the entire Commission during a regularly held and publicly accessible meeting.  Similarly, nothing in the record indicates that parties before the Commission must be granted an opportunity to object to a request for written findings and conclusions.  The Notice of Decision does not impose such a requirement, nor do the excerpts of the Commission bylaws and County personnel rules that have been presented.  While this leaves open the possibility that such objections could be considered by the Commission—as was done with Oreizi's earlier objections to the County's reconsideration motion—the Court finds no reason in the absence of any evidence to conclude that such a requirement must exist.  And all of this overlooks one other key detail:  Oreizi had a ready avenue to raise the very challenge he now makes.  In fact, the Commission informed him of that possibility in the Findings and Conclusions when it explained that its written decision could be challenged through a judicial appeal in state court.  Findings and Conclusions at 31.  Oreizi's choice not to pursue that route is a failure of judicial exhaustion, not a showing of the Commission's bias.

Finally, throughout his opposition briefing, Oreizi uses quite accusatory language to describe actions of the County and the Commission.  At his boldest, Oreizi goes so far as to accuse the Commission of being implicated in unlawful retaliation.  It is hard to parse whether Oreizi is contending that the Commission is liable itself or that the Commission's actions are merely additional evidence of the County's unlawful conduct.  Under either approach, however, he raises a "cat's paw" theory, wherein the County was motivated to concoct late findings and conclusions that would stonewall Oreizi's pursuit of legal action, and used the Commission to make that happen.  In other words, the Commission was the County's puppet, and all the post-hearing conduct involving the production of the Findings and Conclusions constituted unlawful retaliation.  But all these assertions ring hollow in so far as Oreizi has not presented evidence showing that the

1    Commission lacked impartiality in rendering its decision as to his appeal.  In fact, the record

2    before the Court runs sharply against that being the case, as the evidence examined above presents

3    a non-nefarious backstory to the Commission's belated production of the Findings and

4    Conclusions.  Oreizi's opposition on this front essentially starts with a presumption that the

5    Commission was biased.  Yet, he has given the Court no good reason for why that should be the

6    case.[4]

7

8                              **b.      Disputed issues**

9          The second fairness requirement is whether the administrative agency resolved disputed

10   issues of fact that were properly before it.  At issue in the Commission hearing was Oreizi's

11   appeal from the County's disciplinary action (i.e., his termination).  In rendering a decision on that

12   appeal, the Commission resolved disputed issues of fact regarding the disciplinary action and

13   Oreizi's challenges to the same.  Notice of Decision at 1–2; Findings and Conclusions at 26–31.

14   These issues included, but were not limited to, the County's purported reasons for imposing

15   discipline and Oreizi's assertions that the County's actions were based on discrimination and

16   retaliation.  Findings and Conclusions at 26–31.  The Commission had jurisdiction to resolve these

17   factual issues.  Findings and Conclusions at 26; see also Fresno County Ordinance § 2.60.040;

18   Cal. Gov't Code §§ 31100–31117.  Oreizi does not contend otherwise.  Thus, the Court finds that

19   this fairness requirement is satisfied.

20

21                             **c.      Opportunity to litigate**

22         The third and final fairness requirement is whether the parties received an adequate

23   opportunity to fully litigate their claims through the administrative proceeding.  The focus of this

24   requirement is the existence of an adequate opportunity, not necessarily what is done with that

25

26   _____

27   [4] The cat's paw theory, which itself is premised entirely on layered speculation in Oreizi's briefing, has other
     problems as well.  Namely, Oreizi has not included it within the allegations of the complaint (either through his causes
     of action against the County or a separate cause of action against the Commission itself), and based on the evidence

28   before the Court nothing suggests that he presented it as part of a claim under the Government Claims Act.  See
     generally Compl.; Bradley Decl., ¶ 6, Ex. E.

                                          13

opportunity.  <u>Murray</u>, 50 Cal. 4th at 869 (explaining that "[i]t is the *opportunity to litigate* that is important in these cases, not whether the litigant availed himself or herself of the opportunity" (quoted source omitted)).  In other words, the failure to present evidence or otherwise participate at the hearing does not prove the requirement is not met.  <u>Sims</u>, 32 Cal. 3d at 481.  Rather, what is important is that the parties had notice of the hearing and an opportunity and incentive to present their cases to the administrative decisionmaker.  <u>Id.</u>

As discussed above, evidence before the Court shows that the Commission hearing was initiated by Oreizi through his appeal of the County's disciplinary action.  The parties were able to present evidence, examine and cross-examine witnesses, and make arguments for or against the discipline.  The Commission then ruled on the matter by granting Oreizi's appeal with respect to the discipline that had been imposed.  At that point, the Commission informed both parties of their additional opportunity to litigate their claims by contesting that decision through a writ of mandate action in court.  Findings and Conclusions at 31.  Under these collective circumstances, it is clear that the parties were afforded an adequate opportunity to litigate their claims in the administrative setting.  Notably, Oreizi does not contend that he was not afforded such an opportunity.

### 3.    Collateral estoppel

Because the fairness requirements of <u>Utah Construction</u> are met, the Commission's Findings and Conclusions should be accorded preclusive effect based on the judicial exhaustion doctrine.  The scope of that preclusion is set by the traditional elements of collateral estoppel.  Once again, those elements are that (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated, (2) the previous proceeding resulted in a final judgment on the merits, and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior proceeding.  <u>Sims</u>, 32 Cal. 3d at 484.  California law features numerous holdings that claims arising from adverse employment action are barred because of collateral estoppel.  <u>See, e.g.</u>, <u>Miller</u>, 169 Cal. App. 4th at 1379, 1383; <u>Castillo v. City of Los Angeles</u>, 92 Cal. App. 4th 477, 482, 486 (2001); <u>Page</u>, 123 Cal. App. 4th at 1143–44; <u>Knickerbocker</u>, 199 Cal. App. 3d at 244–45.  Under the logic of these decisions, where an

1   employee appeals a disciplinary action through an administrative process and the administrative

2   agency finds the employer lawfully imposed discipline, the employee is precluded from claiming

3   in a subsequent civil action that he or she was subject to unlawful discipline.  The administrative

4   finding is binding and cannot be contradicted.

5       In so far as the Commission's Findings and Conclusions are given preclusive effect, the

6   same outcome shall apply to Oreizi's FEHA claims.  The Findings and Conclusions provide that

7   the County had "just cause" to discipline Oreizi (albeit at a reduced level).  Findings and

8   Conclusions at 30–31.  Amongst its legal conclusions, the Commission likewise determined that

9   Oreizi's "various defenses alleging, in essence, retaliation and cover-up" were without merit.  Id.

10  at 30.  The County has also produced evidence showing that Oreizi's discrimination allegations

11  were investigated by an outside investigator prior to the Commission hearing, that reports of this

12  investigation were submitted as evidence at the hearing, and that the topic of alleged

13  discrimination elsewhere arose throughout the hearing.  Basham Decl., Ex. A, Ex. D.  Meanwhile,

14  each of Oreizi's FEHA claims is, in part, based on allegations that contradict the Commission's

15  Findings and Conclusions.  Oreizi's discrimination cause of action alleges that the County violated

16  FEHA by disciplining him and attempting to terminate his employment based on his national

17  origin.  Compl., ¶ 23.  His retaliation cause of action alleges that the County violated FEHA by

18  disciplining him and attempting to terminate his employment because of a human resources

19  complaint based on derogatory comments regarding his national origin.  Id., ¶ 27.  The same

20  theory also undergirds his hostile workplace cause of action.  Id., ¶ 31.  Consistent with California

21  law, collateral estoppel precludes Oreizi from proving these allegations as doing so would

22  contradict the Commission's decision that was never set aside.  Oreizi's lone argument on this

23  front—that preclusion cannot apply because the Commission proceeding involved a different

24  primary right from what is at stake in this case (i.e., reinstatement of employment versus legal

25  damages)—has already been rejected by California courts applying issue preclusion in this

26  context.  See Castillo, 92 Cal. App. 4th at 486–87.  Thus, the Court will grant the County

27  summary judgment as to Oreizi's FEHA claims commensurate with the scope of preclusion set by

28  his judicial exhaustion failure.

1          **B.     Administrative exhaustion**

2          The County's next argument picks up where the last one left off.  Namely, the County

3   seeks judgment against the remaining parts of Oreizi's FEHA claims with argument that Oreizi

4   did not properly exhaust his administrative remedies as to his allegations regarding conduct

5   occurring after the Commission hearing.

6          To bring a FEHA claim to court, one must first file a written complaint with the California

7   Department of Fair Employment and Housing and obtain from the Department a notice of right to

8   sue.  Cal. Gov't Code §§ 12960, 12965(c)(1); see Romano v. Rockwell Int'l, Inc., 14 Cal. 4th 479,

9   492 (1996).  Absent compliance with this step, the employee's FEHA claim is barred for a failure

10  to exhaust the administrative remedies provided by law.  Morgan v. Regents of Univ. of Cal., 88

11  Cal. App. 4th 52, 63 (2000).  As part of this exhaustion requirement, FEHA demands that the

12  particulars of an unlawful practice are stated in the administrative complaint.  § 12960(c).  In other

13  words, to properly exhaust administrative remedies as to a particular unlawful act, the employee

14  must specify that particular act in the administrative complaint, even if other cognizable wrongful

15  acts are specified.  Okoli v. Lockheed Tech. Operations Co., 36 Cal. App. 4th 1607, 1613 (1995).

16  That said, employees are not required to specify charges with "literary exactitude" and the absence

17  of a "perfect fit" between an administrative complaint and a civil complaint is not necessarily

18  fatal.  Soldinger v. Northwest Airlines, Inc., 51 Cal. App. 4th 345, 381 (1996); Yurick v. Superior

19  Court, 209 Cal. App. 3d 1116, 1121 (1989) (quoting Ong v. Cleland, 642 F.2d 316, 319 (9th Cir.

20  1989)).  Rather, unlawful incidents or practices that are "like or reasonably related" to those

21  identified in the administrative complaint and that would necessarily be uncovered in the course of

22  a Department investigation can be included in a subsequently filed lawsuit.  Soldinger, 51 Cal.

23  App. 4th at 381; Okoli, 36 Cal. App. 4th at 1617.  "Essentially, if an investigation of what was

24  charged in the [administrative agency filing] would necessarily uncover other incidents that were

25  not charged, the latter incidents could be included in a subsequent [civil] action."  Soldinger, 51

26  Cal. App. 4th at 381 (quoting Okoli, 36 Cal. App. 4th at 1615).

27         The County argues that Oreizi's FEHA claims cannot stand on allegations regarding

28  unlawful conduct occurring after the Commission hearing—most notably, Oreizi's charge that he

1   was constructively terminated when he submitted his resignation in March 2017—as his lone

2   administrative complaint was submitted to the Department more than a month and a half before

3   that hearing was held.  In support of its motion, the County has presented evidence regarding an

4   administrative complaint that Oreizi submitted on December 7, 2016.  Oller Decl., ¶ 6, Ex. 3.

5          From this evidence, it is clear that Oreizi's administrative complaint did not reference

6   unlawful conduct occurring after the Commission hearing.  Even so, the Court concludes that

7   Oreizi exhausted his administrative remedies as to his allegations regarding that conduct, as those

8   allegations are like and reasonably related to the allegations set forth in his administrative

9   complaint.  Namely, in the administrative complaint Oreizi asserted that, owing to actions of his

10  supervisors, he was subject to discrimination, retaliation, and a hostile workplace because of his

11  national origin.  While the administrative complaint only describes adverse employment action up

12  to his termination in October 2016, Oreizi explains in his complaint at bar that he endured adverse

13  employment action after the Commission hearing on the same basis.  That is, according to the

14  instant pleading, Oreizi suffered discrimination and retaliation after the hearing when his

15  supervisors created a campaign to constructively terminate him because of animus toward his

16  national origin.  Compl., ¶¶ 19, 23, 27, 31.  In this light, both submissions rest on the same factual

17  foundation.  The civil complaint merely describes additional unlawful conduct as an extension of

18  the unlawful conduct that occurred before the administrative complaint was filed.  Said differently,

19  the allegations of post-hearing conduct indicate that the underlying discrimination, retaliation, and

20  hostile workplace were ongoing conditions.  Soldinger, 51 Cal. App. 4th at 382 (explaining that

21  ongoing incidents of retaliation reasonably would have been uncovered in an investigation despite

22  their absence from the administrative complaint).  What is more, the County's evidence also

23  indicates that the Department was actively investigating Oreizi's administrative complaint through

24  at least June 26, 2017, which is when the Department informed Oreizi of his statutory right to

25  request a right-to-sue notice because his complaint had been on file for 150 days.  See Cal. Gov't

26  Code § 12965(c)(1)(A).  In other words, even if Oreizi's administrative complaint did not

27  specifically refer to post-hearing conduct, the Department was investigating Oreizi's allegations of

28  the County's discrimination and retaliation based on his national origin throughout the time that

1   that conduct was occurring.  Under these circumstances, the Court finds that Oreizi's allegations

2   regarding post-hearing conduct would necessarily be uncovered by an investigation arising from

3   his administrative complaint.  See Baker v. Children's Hosp. Med. Ctr., 209 Cal. App. 3d 1057,

4   1065 (1989) ("[I]t is reasonable that an investigation of the allegations in the original

5   [Department] complaint would lead to the investigation of subsequent discriminatory acts

6   undertaken by respondents in retaliation for appellant's filing an internal grievance.").  Therefore,

7   the Court concludes that Oreizi properly exhausted his administrative remedies as to those

8   allegations.

9

10          **C.     Whistleblower claims**

11          For its final argument, the County seeks judgment as to Oreizi's whistleblower causes of

12   action under California Labor Code § 1102.5 with arguments that neither claim is legally viable.

13          Section 1102.5 "is a whistleblower statute, the purpose of which is to encourage workplace

14   whistle-blowers to report unlawful acts without fearing retaliation."  United States ex rel. Lupo v.

15   Quality Assurance Servs., Inc., 242 F. Supp. 3d 1020, 1029 (S.D. Cal. 2017) (quoting Soukup v.

16   Law Offices of Herbert Hafif, 39 Cal. 4th 260, 287 (2006)).  To secure relief under § 1102.5, one

17   must show that he (1) engaged in protected activity, (2) was thereafter subjected to adverse

18   employment action, and (3) there was a causal link between the two.  Id. (citing Soukup, 39 Cal.

19   4th at 287–88).  The first element is relevant here.  Under the statute, an employee engages in

20   protected activity when disclosing information "to a government or law enforcement agency, to a

21   person with authority over the employee or another employee who has the authority to investigate,

22   discover, or correct the violation or noncompliance" or "providing information to, or testifying

23   before, any public body conducting an investigation, hearing, or inquiry," so long as the employee

24   "has reasonable cause to believe that the information discloses a violation of state or federal

25   statute, or a violation of or noncompliance with a local, state, or federal rule or regulation."

26   § 1102.5(b).  "The employee 'need not prove an actual violation of law; it suffices if the employer

27   fired [her] for reporting [her] reasonably based suspicions of illegal activity.'"  Quality Assurance

28   Servs., 242 F. Supp. 3d at 1029 (quoting Ferrick v. Santa Clara Univ, 231 Cal. App. 4th 1337,

1    1345 (2014)).

2          The County raises two relatively narrow arguments against Oreizi's § 1102.5 causes of

3    action.  First, the County argues that Oreizi's claims must fail because they are barred under the

4    "internal personnel matters" doctrine.  The Court is not persuaded.  To start, this doctrine finds its

5    origin in Patten v. Grant Joint Union High School District, 134 Cal. App. 4th 1378, 1384–85

6    (2005); see also Siazon v. Hertz Corp., 847 F. App'x 448, 451 (9th Cir. 2021) (citing Patten).

7    There, the California Court of Appeal held that a teacher's forwarding to a supervisor of student

8    complaints regarding other teachers involved only internal personnel matters, rather than the

9    disclosure of a legal violation.  Id.  In contrast to Patten, however, Oreizi has specifically alleged

10   that he disclosed information involving the violation of state and federal law (including California

11   Government Code § 12940) in a complaint to human resources and an administrative complaint to

12   the Department of Fair Employment and Housing.  Compl., ¶¶ 35, 38; Doc. No. 39 at 16.  This

13   theory also has some evidentiary support.  Oller Decl., Ex. 3.  Given this, the Court finds that

14   application of this doctrine under these circumstances would be inappropriate and will deny the

15   County's motion on this ground.

16         As for its second argument, the County contends that Oreizi's claims fail in so far as Oreizi

17   has not specified what legal violation undergirded his disclosure of information.  In large part, the

18   parties' dispute on this front does not turn on submitted evidence or a lack thereof, but rather the

19   sufficiency of Oreizi's pleading.  At issue are the following allegations under Oreizi's

20   whistleblower claim for retaliation occurring before the civil service hearing:

21         [The County] violated Labor Code section 1102.5 by disciplining Plaintiff and
           attempting to terminate Plaintiff's employment and imposing unreasonably onerous
22         terms and conditions on Plaintiff's employment because of an animosity against
           Plaintiff based on his objections, to his supervisors' instructions to rewrite pesticide
23         reports and/or because of his refusal to rewrite such reports.  Plaintiff is informed
           and believes and thereon alleges that such instructions violated applicable law.
24         Plaintiff is informed and believes and thereon alleges that his supervisors knew
           about his objections and refusals to make the alterations directed by his supervisors,
25         complaint to HR and/or shared with each other said protests.

26   Compl., ¶ 35.[5]  The County takes issue with the phrase "applicable law" and argues that it is

27   _____

28   [5] These allegations are set forth under Oreizi's whistleblower claim for pre-civil service hearing retaliation (fourth
     cause of action), and not directly restated under his whistleblower claim for post-civil service hearing retaliation (fifth

1  entitled to judgment because Oreizi has not identified a specific legal violation for purposes of the

2  alleged retaliation related to pesticide reports.

3       The Court agrees with the basic premise of the County's challenge that Oreizi's claims

4  cannot survive to the extent they do not rest on a disclosure of a perceived legal violation.  After

5  all, the plain language of § 1102.5(b) requires that an employee "has reasonable cause to believe

6  that the information discloses a violation of state or federal statute, or a violation of or

7  noncompliance with a local, state, or federal rule or regulation."  Yet, in moving for judgment on

8  this ground, the County has not demonstrated that Oreizi cannot prove these allegations as a

9  matter of law.  Nor has the County shown that there are no genuine issues of material fact

10 regarding these allegations and the greater claim.  As much is highlighted by the numerous

11 statutes regarding fraudulent government reports that Oreizi cites in his opposition brief.  That is,

12 Oreizi has shown—and the County has not shown impossible—that he is able to submit evidence

13 (including his own testimony) that he reasonably believed he was disclosing certain legal

14 violations.  Although Oreizi's failure to articulate specifics in his complaint may illuminate a

15 potential weak spot in his claims moving forward, the Court declines to dispose of those claims on

16 pleading insufficiency grounds through the County's Rule 56 motion.

18 **<u>ORDER</u>**

19      Accordingly, IT IS HEREBY ORDERED that:

20 1.    The County's motion for summary judgment (Doc. No. 66) is GRANTED in part

21     and DENIED in part;

22 2.    Oreizi's first (FEHA discrimination), second (FEHA retaliation), and third (FEHA

23     hostile workplace) causes of action are barred in so far as establishing these claims

24     would violate the scope of preclusion set by Oreizi's failure to exhaust his judicial

25     remedies; and

26 3.    A status shall be SET for Monday, January 24, 2022, at 1:30 p.m.

cause of action).  They are, however, incorporated into the latter.  Compl., ¶ 37.  Regardless, the Court's resolution of the County's challenge (against both claims on this specific ground) is not affected by the precise position of these allegations within the complaint.

1
2
IT IS SO ORDERED.

3
Dated:   January 15, 2022

SENIOR  DISTRICT  JUDGE

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28